**LYPP v. UNITED STATES.**
**No. 10153.**

Circuit Court of Appeals, Sixth Circuit.
Feb. 6, 1947.

Donald B. Frederick, of Detroit, Mich. (Donald B. Frederick, of Detroit, Mich., on the brief), for appellant.

Frank Norris, of Detroit, Mich. (John C. Lehr and Francis X. Norris, both of Detroit, Mich., and David London and Walter D. Murphy, both of Washington, D. C., on the brief), for appellee.

Before HICKS, MARTIN, and MILLER, Circuit Judges.

HICKS, Circuit Judge.

The District Attorney preferred an Information against appellant, Alex Lypp, in which it was charged that he, on or about the 4th day of April 1944, up to and including the 10th day of November 1944, unlawfully, wilfully and knowingly performed an act prohibited by Ration Order No. 2-B, as amended, issued February 25, 1943, effective March 6, 1943, by the Price Administrator of the Office of Price Administration, pursuant to and under the authority vested in him by Public Law 671 of the 77th Congress, as amended, Public Law No. 89 of the 77th Congress, as amended, Public Law No. 507 of the 77th Congress, Executive Order No. 9125; Directive No. 1 and Supplementary Directive No. 1-Q of the War Production Board; that is to say, that he did unlawfully, wilfully and knowingly lease, loan, borrow and use a 1942 car, to wit, a blue Dodge Coupe, Michigan License EL-6945, Serial No. 3059122, Motor No. D 22-12312, Certificate of Title No. 2194961, for a period exceeding thirty days, contrary to and in violation of the provisions of Section 2.6 of Ration Order 2-B as amended, and Section 4.1 of Ration Order 2-B, as amended, and contrary to the form, force and effect of the Act of Congress in such case made and provided and against the peace and dignity of the United States.

Lypp pleaded not guilty, was tried and convicted by a jury and was sentenced. He appealed.

He complains of the denial of a directed verdict, of the admission of certain testi-

mony and of one feature of the charge of the court. The principal offense complained of is the violation of Ration Order 2-B which governed the use of 1942 passenger automobiles during the period covered by the Information. Article IV of Ration Order 2-B, in so far as it is material here, is as follows:

"Article IV—Prohibitions and Penalties: Definitions: Other Prohibited Acts:

\*     \*     \*     \*     \*     \*

"Section 4.1—This Order Governs the Transfer, Registration, Alteration and Use of All 1942 Cars. No person shall transfer or acquire (or offer to transfer or acquire) a 1942 car, or shall alter, register, or use or permit the alteration, registration or use of a 1942 car except as permitted by the provisions of this order. These provisions apply regardless of any conflicting private agreement or obligation.

\*     \*     \*     \*     \*     \*

"(c) No person shall solicit, offer, attempt or agree to do any act in violation of this Ration Order No. 2-B, either directly or indirectly. (This provision deleted by Amendment No. 12, June 19, 1944). \* \* \*"

It is apparent that Sec. 4.1 above quoted prohibited appellant from using a 1942 car except as permitted by Ration Order 2-B(a). Under the provisions of Ration Order 2-B(a), appellant might have lawfully leased, borrowed and operated a 1942 car for a period of thirty days or less, if the car was operated and registered for use. The purpose of paragraph (a) was "to permit the occasional use of a car for a short time, and does not, therefore, permit the regular use of a car through a chain of transactions."

It is clear enough that if appellant used the car described in the Information in violation of Ration Order 2-B, he was guilty.

There is substantial and uncontroverted evidence that appellant drove the car described in the Information some times under one license number and some times under another, in and upon the streets of Detroit and its suburbs, for practically the whole period of time mentioned in the Information, or for nearly seven months. This was within itself a violation of Ration Order 2-B(a) which limited its use by appellant to a maximum period of thirty days. Further, he could not use the car at all unless it was registered for use. The car was never registered for use either with the Michigan Department of State, or with any authority whatever until September 14, 1944, and at that time appellant's use of it had been unlawful under any circumstances since May 4, 1944. When it was registered he caused the registration certificate to be issued in the name of James Melton Motor Sales, a nonexistent concern, supposed to be located at Jamaica, New York. Just why an assumed name was used in the registration certificate is not altogether clear, but it is clear from appellant's voluntary admission that he and one Hayden bought the car in March 1944 from one Smith, a used car dealer in Detroit, for the purpose of transporting intoxicating liquor; that Hayden paid him $50.00 a week to bring whiskey from Chicago and other places to Detroit; and that this was a violation of 2-B(a) which forbade the regular use of the car through a chain of transactions. Still further, the evidence is undisputed that appellant's use of the car was unlawful because he did not lease, borrow or operate it as provided for in paragraph (a). Appellant and Hayden bought it outright, for cash, from Smith, the used car dealer.

In addition to all this, it is conceded that during the period covered by the Information, the car was rationed and it follows that appellant was not entitled to the use or possession of it unless he had a priority certificate for it. There is no positive evidence that he had obtained such a certificate; the inference is clear that he had not. According to his own admission, he and Hayden went to Smith's used car lot, paid Smith the money for it, and "they got the car right away."

■ We think there is substantial evidence to establish appellant's guilt and that his motion for a directed verdict was properly denied.

■ Appellant complains of the admission of evidence tending to show that his use of the car involved him in unlawful

liquor transactions. The contention is without merit. It is a well established general rule that in a prosecution for a particular offense, evidence that the accused had committed another offense wholly independent of that for which he was on trial, is inadmissible, but the rule has its exceptions. Evidence tending to show that appellant used the car for the unlawful transportation of liquor was competent for whatever it might be worth to the jury in determining how appellant used the car, whether occasionally or regularly, through a chain of transactions, and also for determining the appellant's motive in using it whether wilfully or otherwise. The record leaves no ground for appellant's complaint in this regard, for the court charged the jury as follows:

"* * * But unfortunately in the proof, and the court felt that this was admissible proof, there are other things that have crept in such as the implication that this man was engaged in bootlegging. He is not being tried for bootlegging. We don't know whether he was in it, or was not. He is not being tried for that, and the only reason that any of that was permitted to enter was because it was all, I think, part of the res gestae, and, in addition to that, bore upon the truth of the entire picture, that is whether certain facts that the government had to prove were present. But I warn you now that you are not trying this man for bootlegging; you are not trying him for having an alias, if he had an alias; and, as I will later explain to you, not necessarily trying the issue of whether or not there is a James Melton Automobile Sales Agency except as it may bear upon the other (the) question involved. The charge here is the defendant was driving, or had in his possession, or under his care and use, knowingly and wilfully a rationed car, and doing it unlawfully. * * *"

It is unnecessary to discuss the element of wilfulness on the part of appellant. The record is too clear to admit of discussion.

■ Appellant complains that appellee's witness, Lindbloom, who as Enforcement Attorney, had charge of the investigation of the case, was permitted to testify concerning the requirements of the regulation Ration Order 2-B. The short answer is, that the testimony complained of was not objected to, and indeed, was for the greater part brought out on cross-examination by appellant's counsel.

■ Appellant complains of the admission of hearsay testimony to the effect that there was no such concern as the James Melton Motor Sales with a location at Jamaica, New York. If we assume that this testimony was hearsay in character, it is in no wise important and neither adds to nor detracts from the well supported conclusion that appellant was guilty. We cannot reverse, if it appears that the evidence did not affect any substantial right of appellant.

■ Finally, it is urged that, in the charge, the court set forth its own interpretation of the elements of the offense with which appellant was charged, and then asked, "Is that right, Mr. Lindbloom?", to which Lindbloom responded, "Yes, that is right, Your Honor." No possible harm could result from the court's action in this particular and it does not deserve criticism for it. The court is of course presumed to know the law as well as the regulations, but a proper interpretation of the regulations involved much detail and it occurs to us that the court asked the question of Lindbloom, the Enforcement Attorney, for the sole and only purpose of making itself sure that its interpretation was not only correct but fair. No harm was done.

Judgment affirmed.